## The State *vs.* Moore.

Upon an indictment charging the prisoner with breaking and entering a dwelling-house in the night time, with intent to steal, and actually stealing therefrom, the jury found the prisoner guilty of entering in the night time and stealing—*Held*, that upon this indictment and finding, the prisoner might be sentenced under the statute for entering a dwelling-house in the night time, with intent to steal.

Upon the trial, it appeared that the prisoner was a guest at an inn, and that in the night he left his own room, and entered the bar-room, and stole some money therefrom.

*Held*, that a principle analogous to that which obtains at law, in civil cases, that an abuse of an authority in law makes the party a trespasser *ab initio*, was not applicable in criminal cases; that as the guest had a legal right to enter the inn, and the bar-room, his subsequent larceny did not relate back, and give a character to his entry, so as to make it illegal, and subject him to punishment for entering with a felonious intent; and that the conviction could not be sustained.

In civil cases, the reason why an abuse of an authority in law, makes the party a trespasser *ab initio*, while an abuse of an authority in fact, renders him liable for the excess only, is, that in the former case it is the policy of the law to prevent an authority in law being turned into an instrument of oppression; while in the latter case, this necessity does not exist, it being the folly of the principal to select an agent unworthy of the trust.

INDICTMENT, for breaking and entering the house of Isaac Paddleford, at Lyman, in the night time, on the 19th day of November, 1840, with intent to steal, and stealing therefrom certain pieces of money.

It appeared in evidence that the prisoner went to the house, which is a public house, and asked for, and obtained lodging for the night, and that he took the money from a box in a desk in the bar-room, in the course of the night.

The jury were instructed that upon this indictment the prisoner might be convicted of burglary, of entering in the night time and stealing, or of larceny; that if the door of the bar-room were shut, and the prisoner left his own room in the night time, and opened the door of the bar-room, or any other door in his way thereto, except his own door, and stole the money, he was guilty of burglary; but that if he left his own room in the night, and stole the money from the bar-room, without opening any door on his way thereto,

The State *v.* Moore.

except his own door, he was guilty of entering in the night time and stealing.

The jury found the prisoner guilty of entering in the night time and stealing.

The counsel for the prisoner contended that under this indictment the prisoner could not be convicted of the offence of which he was found guilty.

He also contended that the prisoner, being a guest, and having entered the house with the assent of the owner, if guilty at all upon this evidence, was guilty of larceny only; and he moved to set aside the verdict, and for a new trial, for the reasons aforesaid.

*Gove,* Attorney General, for the state.

*Goodall,* for the prisoner.

GILCHRIST, J. The first question presented by the case, is, whether, under this indictment, the prisoner can be convicted of entering in the night time with intent to steal. That the actual larceny, if proved, is sufficient evidence of the intent, and dispenses with the necessity of any other evidence on that point, has been repeatedly settled in this court, and elsewhere. *State* vs. *Squires,* 11 *N. H. Rep.* 37; *Jones* vs. *The State,* 11 *N. H. Rep.* 269; *Commonwealth* vs. *Hope,* 22 *Pick.* 1, *and cases there referred to.*

It is said, in the case last cited, that on an indictment "charging the breaking and entering a dwelling-house in the day time, and actually stealing therefrom goods described, the latter averment, of actually stealing, is to be regarded as equivalent to alleging the intent to steal; and a general verdict, finding all the facts, would subject the party to the punishment provided by the statute for breaking and entering with an intent to steal."

The first section of the act of January 2, 1829, *N. H. Laws* 136, *Ed. of* 1830, provides for the punishment of the offence

of breaking and entering a dwelling-house in the night time with intent to steal. The third section punishes the offence of entering a dwelling-house, in the night time, without breaking, with intent to steal.

It is very clear, that the offence of entering without breaking, is included in an indictment for breaking and entering. " It is invariably sufficient to prove so much of the indictment, as shows that the defendant has committed a substantive offence, therein specified." Per Lord Ellenborough, 2 *Camp.* 584, 646. " There are cases where a single count in an indictment may allege all the circumstances necessary to constitute two different crimes, and yet be in law sufficient. But that happens only in cases where the offence described in the count is a complicated offence, comprehending in itself divers circumstances, each of which is an offence. In such cases the lesser crime constitutes an essential part of the higher crime, and is merged in a conviction for the higher crime. And it is only in cases where the prisoner is acquitted of the higher offence, that he can be convicted of some minor offence, necessarily involved in the description of such higher offence." *State* vs. *Nelson*, 8 *N. H. Rep.* 163.

Lord Hale says, 1 *Hale P. C.* 560, " and I think that as the offences of burglary and felony may be joined in the same indictment, so three offences may be joined in the same indictment; and if he be acquitted of the one, he may be convicted of the other two; as, namely, for burglary, for felony, and for felony under the *St. 5 and* 6 *Ed.* 6, *c.* 9; that is, for breaking and entering a house, and putting the owner or his family in fear."

If, upon an indictment for breaking and entering in the night time, with intent to steal, and actually stealing, the prisoner may be convicted of the larceny, and acquitted of the burglary; that is, if the breaking and entering may be rejected, and the indictment remain good for the stealing, what reason is there, why, where entering in the night time

The State *v.* Moore.

with intent to steal, is punishable, you may not, where that offence is alleged, and an actual stealing, also, reject the breaking alone, convict the prisoner of entering in the night time with intent to steal, and acquit him of the breaking ? We see no reason why this may not be done ; and all the reasoning of the courts, in relation to a minor offence being included in a description of a higher offence, admits that it may be done when the minor offence is thus included.   By our statute, breaking and entering in the night time, with intent to steal, is made one offence ; and entering in the night time, without breaking, with intent to steal, is made a lesser offence, and subjects the offender to a lighter punishment; the only distinction between the offences being the breaking, which, for the security of persons and habitations, where it coëxists with other guilty acts, the law has always endeavored to prevent, by the severest penalties.   We think that this objection must be overruled.

A question of more difficulty is presented by the second objection.   It is said, that as the prisoner was lawfully in the house, he cannot be convicted of the offence of entering in the night time with intent to steal.

It is clear that the prisoner had a legal authority to enter the house, without any special permission for that purpose from the owner or landlord.   If an innkeeper, or other victualler, hangs out a sign, and opens his house for travellers, it is an implied engagement to entertain all persons who travel that way, and upon this universal *assumpsit*, an action on the case will lie against him for damages, if he, without good reason, refuses to admit a traveller.   3 *Bl. Com.* 166. And an indictment at common law lies against an innkeeper if he refuses to receive a guest, he having at that time room in his house.   If the traveller conducts properly, he is bound to receive him, at whatever hour of the night he may arrive.   *Rex* vs. *Ivens*, 7 *C. & P.* 213.

An innkeeper, holding out his inn "as a place of accommodation for travellers, cannot prohibit persons who come

under that character, in a proper manner, and at suitable times, from entering, so long as he has the means of accommodation for them." *Markham* vs. *Brown*, 8 *N. H. Rep.* 528. As he has authority to enter the house, so he may enter any of the common public rooms. *Markham* vs. *Brown.* The bar-room of an inn, is, from universal custom, the most public room in the house; and whether a traveller may, without permission, enter any of the private rooms or not, he has clearly a right to enter the bar-room.

If, after having made an entry into the house by authority of law, he commit a trespass, he may be held civilly responsible as a trespasser *ab initio.* This principle has always been recognized since the decision of *The Six Carpenters' Case*, 8 *Coke* 290.

The prisoner, therefore, had a right to enter the inn, and the bar-room; and the question arises, whether the larceny committed in the bar-room can relate back, and give a character to the entry into the house, so as to make it criminal, and the prisoner punishable for it, upon reasoning similar to that which, in a civil action, would render him liable as a trespasser *ab initio?* Except the inference that may lawfully be made from the act of larceny, there is no evidence that he entered with any illegal purpose, or a felonious intent.

The existence of a distinction between the consequences of an abuse of an authority in law, and the abuse of an authority in fact, is well settled. In the former case, the party is a trespasser *ab initio;* in the latter, he is liable only for the actual tortious act. Different reasons have been given for the distinction, and it is important to determine what the reason actually is, in order to ascertain whether the principle of holding one a trespasser *ab initio*, be applicable in criminal cases.

In the *Six Carpenters' Case*, the reason is said to be, "that in the case of a general authority or license of law, the law adjudges by the subsequent act, *quo animo*, or to

what intent he entered, for, *acta exteriora indicant interiora secreta.* But when the party gives an authority or license himself, he cannot for any subsequent cause punish that which is done by his own authority or license."

What is offered here as a reason for the distinction, is hardly more than a statement that such a distinction exists. And in the case of *Allen* vs. *Crofoot,* 5 *Wend.* 506, Savage, C. J., intimates that it is a distinction without a difference of principle. He proceeds to say that a better reason is given for it, in *Bac. Abr., Trespass, B.* " Where the law has given an authority, it is reasonable that it should make void every thing done by an abuse of that authority, and leave the abuser as if he had done every thing without authority. But where a man who was under no necessity to give an authority, does so, and the person receiving the authority abuses it, there is no reason why the law should interpose to make void every thing done by such abuse, because, it was the man's folly to trust another with an authority who was not fit to be trusted therewith."

Even here, however, it is not stated *why* it is reasonable that the law should make void every thing done by an abuse of an authority.

A much more sensible reason for the distinction is given in *Hammond's Nisi Prius* 59. He observes, that the reason given by Coke " cannot be the true reason of the rule, because, if the nature of the subsequent act of trespass was indicative of a previous evil intent, it must be so, not only in the instance where it has been perpetrated in executing an authority in law, but likewise where it has been committed in fulfilling an authority in fact. The ground, therefore, upon which one who has been guilty of an abuse is made a trespasser *ab initio,* is, (for there is no other) that of policy, and the rule was instituted to prevent an authority in law being turned into an instrument of injustice and oppression." And Richardson, C. J., says, in the case of *Barrett* vs. *White & a.,* 3 *N. H. Rep.* 227, that it would be contrary to sound

public policy to permit a man to justify himself at all under a license or authority allowed him by law, after he had abused it, and used it for improper purposes. The presumption of law is, that he who thus abuses such an authority, assumed the exercise of it in the first place for the purpose of abusing it. The abuse is, therefore, held to be a forfeiture of all the protection which the law would otherwise give.

But where the authority is derived from an individual, and the authority is abused, the party becomes a trespasser for the excess only; "for the necessity and policy which, in the instance where an authority in law has been abused, operate to invalidate the proceedings from the commencement, no longer exist." *Hammond's Nisi Prius* 66.

These remarks seem to us a sensible exposition of the reason of the distinction. Where the law invests a person with authority to do an act, the consequences of an abuse of that authority by the party, should be severe enough to deter all persons from such an abuse.

But has this " policy of the law" ever been extended to criminal cases? We are not aware that it has. It is true that, in order to ascertain the intent of the accused, the law often regards the nature of the act committed. But this is generally such an act as could not have been committed with any other than a criminal purpose. Thus, the act of secretly taking the property of another, necessarily raises the presumption that the party intended to steal, and this presumption stands until explained by other evidence. In an indictment for breaking, &c., with intent to commit a felony, the actual commission is so strong a presumptive evidence, that the law has adopted it, and admits it to be equivalent to a charge of the intent in the indictment. But where one lawfully enters a house, it by no means follows, that because he steals, while there, he entered with that purpose. The act of stealing is evidence of the intent to steal; but is hardly sufficient to rebut the presumption that

The State *v.* Moore.

where he lawfully entered, he entered for a lawful purpose. To hold that, for a lawful entry, a party could be punished, because, after such entry, he does an unlawful act, would be to find him guilty of a crime by construction ; a result which the law, in its endeavors always to ascertain the real intention of the accused, invariably, in theory, avoids, and which has seldom, in modern times, happened in practice.

A case is put by Lord Hale, the reasoning of which is analogous to that we have used in this case. "It is not a burglarious breaking and entry, if a guest at an inn open his own chamber door, and takes and carries away his host's goods, *for he has a right to open his own door*, and so not a burglarious breaking." 1 *Hale P. C.* 553, 554.

If a burglary could not be committed because the party had a right to open his own door, notwithstanding the subsequent larceny, the same principle would seem to be applicable here, where the prisoner had a right to enter the house, and where, by parity of reasoning, his subsequent larceny would not make his original entry unlawful.

For these reasons, the judgment of the court is, that the verdict be set aside and a

*New trial granted.*