Hillsborough-southern judicial district
No. 2008-278

THE STATE OF NEW HAMPSHIRE

v.

ULYSSES MCMILLAN

Argued: February 12, 2009
Opinion Issued: May 29, 2009

754

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Ulysses McMillan, appeals his convictions for burglary, *see* RSA 635:1 (2007), and first degree assault, *see* RSA 631:1 (2007), following a jury trial in Superior Court (*Morrill*, J.). We affirm.

The record supports the following facts. In March 2007, the defendant and Justine Mollomo co-signed a lease for an apartment. Sometime prior to August 2007, Mollomo asked the defendant to move out. She removed all of his clothing and personal belongings from the apartment, and he no longer had a key. However, the defendant continued to visit the apartment on a regular basis.

On August 3, 2007, the defendant entered the apartment by climbing up the fire escape and entering through the bathroom window. Aaron Davis, an acquaintance of Mollomo, was watching television in Mollomo's living room when he heard a loud noise, and subsequently saw the defendant coming out of the bathroom. There was a physical altercation between the men, and Davis was eventually able to remove the defendant from the apartment. Soon thereafter, Davis left the apartment, and Mollomo locked the door behind him. Within minutes of Davis' departure the defendant returned, kicked the door in, and assaulted Mollomo. Mollomo sustained serious injuries to her face and neck.

At trial, the State introduced into evidence the recordings of two emergency 911 calls made by Mollomo. Prior to trial, the court heard argument regarding their admissibility, and, over the defendant's objection, ruled in favor of the State. The trial court, however, agreed to give the jury the limiting instruction proposed by the defendant. For reasons unclear from the record, the limiting instruction was never given to the jury.

At the close of evidence, the defendant offered a proposed jury instruction on the elements of burglary. The trial court, however, gave its own instruction, to which the defendant objected. The defendant was subsequently convicted of both burglary and first degree assault. This appeal followed.

On appeal, the defendant first contends that the trial court erred by admitting the 911 tapes without providing a limiting instruction. This issue, however, was not preserved for appeal.

> As a general rule, we will not consider grounds of objections not specified or called to the court's attention at the trial. This requirement, grounded in common sense and judicial economy, affords the trial court an opportunity to correct an error it may have made and is particularly appropriate where an error involves a jury instruction.

*State v. Eldredge*, 135 N.H. 562, 564 (1992) (quotation omitted). Here, the defendant did not bring to the trial court's attention its failure to provide the jury with the previously agreed upon limiting instruction at the time the tapes were introduced, or any time thereafter. Therefore, this issue has not been preserved for appeal, and we decline to address it.

■ The defendant next argues that the trial court's jury instruction on the elements of burglary was erroneous because: (1) it failed to give proper weight to the defendant's status as a leaseholder; and (2) it did not require the jury to determine whether the defendant knew he was not licensed or privileged to enter the premises. "The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Johnson*, 157 N.H. 404, 407 (2008) (brackets and quotation omitted). When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. *Id.* We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case. *Id.* Whether or not a particular jury instruction is necessary, and the scope and wording of the instruction, is within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion. *Id.*

RSA 635:1, I, provides that a person is guilty of burglary if he enters an occupied section of a building with purpose to commit a crime therein, unless the premises are at the time open to the public or "the actor is licensed or privileged to enter." The trial court's instruction on the "licensed or privileged" element stated:

Now, a person who is licensed or privileged — a person who is licensed or privileged to enter is not guilty of a burglary. A license or privilege does not have to be explicit. A person has permission to enter if he would naturally be expected to be in the premises in the normal course of his habits or duties. The permission to enter may be limited to a time when he would be reasonably expected to be on the premises. The permission may also be limited to part of the premises.

In deciding whether the Defendant was licensed or privileged, you may consider among other factors his legal title, his relationship with the other party, and the length of their separation, his current residence, the circumstances of his prior entries, the type and amount of his personal property within the apartment, and his method of entry. You should consider all the evidence in this case and decide whether the State has proven beyond a reasonable doubt that the Defendant did not have a license or privilege to enter the premises.

The defendant first argues that the trial court's instruction did not properly advise the jury as to the relevance of his leaseholder status on the

issue of license or privilege to enter. He asserts that the trial court's instruction improperly focused the jury's consideration on whether he had permission to enter the apartment, rather than his legal right to do so as a leaseholder. The defendant further contends that "one who has a formal right to enter a place cannot be convicted of burglary for exercising that right."

To the extent the defendant raises an issue of statutory interpretation, our review is *de novo. State v. Offen*, 156 N.H. 435, 437 (2007). We are the final arbiter of the intent of the legislature as expressed in the words of a statute as a whole. *State v. Simone*, 151 N.H. 328, 330 (2004). Our task is to construe Criminal Code provisions according to the fair import of their terms and to promote justice. *Id.* In doing so, we look first to the plain language of the statute to determine legislative intent. *Id.*

█ RSA 635:1 does not define the phrase "licensed or privileged." However, we have previously interpreted the term "privileged" in this context to mean whether a person "may naturally be expected to be on the premises often and in the normal course of his duties or habits." *State v. Thaxton*, 120 N.H. 526, 528 (1980). Further, "a person who *is* privileged may still commit burglary if he enters at a time when he would not reasonably be expected to be present or if he goes into a room as to which his privilege does not extend." *Id.* at 529.

The defendant argues that, while this definition "may be proper" when a person claims privilege by virtue of permission to enter the premises, it does not extend to a person claiming to possess an independent "formal, legal license" to be there. The defendant thus contends that the trial court erred in its instruction because it allowed the jury to consider whether he would naturally be expected to be in the apartment without giving proper weight to his legal right to be there as a co-lessee. We disagree.

The defendant's argument rests upon the assumption that a leasehold is equivalent to a license to enter the premises under RSA 635:1, I. Under the defendant's interpretation, his interest in the apartment pursuant to the lease is dispositive on the issue of license or privilege, leaving no room to consider the underlying circumstances of his entry. Simply put, regardless of his actual possession of the premises or any other relevant fact, his status as a leaseholder would prevent a conviction for burglary. We do not believe the legislature intended this result.

█ It is generally accepted that burglary statutes are intended to protect the occupant or possessor of real property. *People v. Glanda*, 774 N.Y.S.2d 576, 581 (App. Div. 2004); *Turner v. Com.*, 531 S.E.2d 619, 621 (Va. Ct. App. 2000). At common law, "the crime of burglary was considered to be an offense against the security of habitation or occupancy. It was not designed

to protect property or ownership, rather, the notion that people should be able to feel secure in their homes." *State v. Hagedorn*, 679 N.W.2d 666, 669 (Iowa 2004) (brackets and ellipsis omitted); *see also Turner*, 531 S.E.2d at 621. Indeed, many jurisdictions have determined that an ownership interest is not conclusive on the question of license or privilege to enter the property for purposes of burglary. *See, e.g., Hagedorn*, 679 N.W.2d at 670 (privilege to enter property is not determined solely by ownership interest); *State v. Lilly*, 717 N.E.2d 322, 327 (Ohio 1999) ("Because the purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive."); *Com. v. Majeed*, 694 A.2d 336, 338 (Pa. 1997) ("[L]egal ownership is not synonymous with license or privilege."); *Turner*, 531 S.E.2d at 622 (defendant husband's proprietary interest inferior to wife's possessory interest); *People v. Scott*, 760 N.Y.S.2d 828, 831 (Sup. Ct. 2003) ("Since burglary is focused on the safety of an occupant . . . ownership rights are irrelevant.").

In *Hagedorn*, the defendant husband was convicted of burglarizing the home he had previously shared with his then estranged wife. *Hagedorn*, 679 S.W.2d at 667-68. On appeal, the defendant argued that he could not be convicted of burglary for entering his own house. *Id.* at 669. In upholding the burglary conviction, the court concluded:

> [W]hether one has a right or privilege to enter property is not determined solely by his or her ownership interest in the property . . . . Rather, the focus under our burglary statute is on whether the defendant had any possessory or occupancy interest in the premises at the time of entry.

*Id.* at 670. The court thus looked at the circumstances surrounding his entry, including that he no longer resided at the home, in determining that there was sufficient evidence from which a jury could find that he did not have a possessory or occupancy interest in the property at the time of the offense. *Id.* at 671.

Similarly, in *Turner*, the defendant husband was convicted of burglarizing the home he held jointly with his wife. *Turner*, 531 S.E.2d at 620. On appeal, he argued that "the right of habitation protected by both the common law and related burglary statutes is subordinate to title or ownership interests." *Id.* at 621. In rejecting this view, the court considered the totality of the circumstances surrounding his entry into the home, including the outstanding court order preventing contact with his wife, and concluded that the "defendant's proprietary interest was relegated to [his] wife's superior possessory interest and right to exclusive habitation." *Id.* at 622.

■ We find these cases persuasive and similarly conclude that holding a legal interest in property, such as a leasehold, is not dispositive on the issue of license or privilege. Consistent with the majority of jurisdictions that have confronted this issue, we believe that the fact finder must look beyond legal title and evaluate the totality of the circumstances in determining whether a defendant had license or privilege to enter.

■ To the extent RSA 635:1 was derived from the Model Penal Code, *State v. Robidoux*, 125 N.H. 169, 172 (1984), we note that our holding is consistent with Model Penal Code, section 221.1(1). Comment two of section 221.1(1) states that the offense of burglary "has been limited in the Model Code to the invasion of premises under circumstances especially likely to terrorize *occupants*." MODEL PENAL CODE § 221.1, cmt. 2 (Official Draft and Revised Comments 1980) (emphasis added).

■ The defendant argues that our decision in *State v. Moore*, 12 N.H. 42 (1841), "supports the proposition that one cannot commit burglary by entering premises one has a legal right to enter." In *Moore*, the defendant was convicted of burglary after entering the barroom of a public boarding house, at which he was a guest. *Moore*, 12 N.H. at 42-43. In reversing his conviction, we noted:

> As [the defendant] has authority to enter the house, so he may enter any of the common public rooms. The barroom of an inn, is, from universal custom, the most public room in the house; and whether a traveller may, without permission, enter any of the private rooms or not, he has clearly a right to enter the barroom.

*Id.* at 46 (citation omitted). While we recognized that the defendant's authority to enter the public area prevented his burglary conviction, we disagree that the same type of authority extends to the circumstances of this case. As discussed above, while the defendant had some proprietary interest in the apartment as a co-lessee, this fact did not automatically give him license to enter under RSA 635:1. Unlike an entry into a public area, the entry here interfered with the security and safety of the occupant, thus implicating the very interests the burglary statute was designed to protect. *See Hagedorn*, 679 N.W.2d at 669.

■ We therefore conclude that the trial court did not unsustainably exercise its discretion in its jury instruction. The trial court specifically instructed the jury that it may consider "all of the evidence," including the defendant's legal title to the property, in determining whether the defendant had license or privilege to enter. The jury instruction also provided a list of relevant, although not exclusive, factors, such as the defendant's method of entry, his past entries, and the length of their separation, which

adequately conveyed to the jury the meaning of the license or privilege element. Thus, the trial court adequately and accurately explained this element of the offense.

The defendant next argues that the trial court unsustainably exercised its discretion when it declined to give an instruction on the State's burden to prove that he knew he was not licensed or privileged to enter the apartment. Although RSA 635:1, I, does not specify a mental state with respect to this element, the defendant urges us to apply the mental state of "knowingly." We decline to do so.

RSA 626:2, I (2007) provides that a person is guilty of a felony "only if he acts purposefully, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." A "material element of an offense" is defined as "an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unrelated to (1) the harm sought to be prevented by the definition of the offense, or (2) any justification or excuse for the prescribed conduct." RSA 625:11, IV (2007). The State concedes, and we agree, that the "licensed or privileged" element of RSA 635:1 is a material element of burglary as a justification or excuse for the prescribed conduct. However, it argues that we should not apply a required mental state, because to impose such a requirement would be contrary to the purpose of the statute. We agree.

■ We have recognized that in some cases the *mens rea* requirement of RSA 626:2, I, should not apply. *See State v. Polk*, 155 N.H. 585, 588-89 (2007); *State v. Goding*, 126 N.H. 50, 51 (1985). In *Goding*, we held that a required mental state should not apply to the DWI second offense statute because of its legislative history, plain meaning, and the relevant case law. *Goding*, 126 N.H. at 51. Similarly, in *Polk*, we declined to apply a required mental state to an element of the aggravated DWI statute in part because "imposing a culpable mental state requirement may, in many cases, defeat the purpose of the statute entirely." *Polk*, 155 N.H. at 589.

■ Here, we have already noted that the burglary statute is intended to protect the occupant of property. *See Glanda*, 774 N.Y.S.2d at 581; *Turner*, 531 S.E.2d at 621; *Lilly*, 717 N.E.2d at 327. Indeed, at common law, "the crime of burglary was considered to be an offense against the security of habitation or occupancy. It was not designed to protect property or ownership, rather, the notion that people should be able to feel secure in their homes." *Hagedorn*, 679 N.W.2d at 669 (brackets and ellipsis omitted). This purpose is echoed in the commentary to the Model Penal Code, upon which our statute is based. *See* MODEL PENAL CODE § 221.1, cmt. 2 (stating that the offense of burglary "has been limited in the Model Code to the

invasion of premises under circumstances especially likely to terrorize occupants"). Further, in describing the unprivileged element of this offense in relation to the required "purpose to commit a crime therein," the Model Penal Code states that it was:

> designed to isolate those situations where an intrusion for any criminal purpose creates elements of alarm and danger to persons who may be present in a place where they should be entitled to freedom from intrusion. Their perception of alarm and danger, moreover, will not depend on the particular purpose of the intruder. The fact that he may be contemplating a minor offense will be no solace to those who may reasonably fear the worst and who may react with measures that may well escalate the criminal purposes of the intruder.

MODEL PENAL CODE § 221.1, cmt. 3(c).

We agree with the State that this purpose "is achieved only if entry is prohibited whenever the defendant has no license or privilege to enter, regardless of whether he thinks he has or not." To hold otherwise would ignore the purpose of the statute. We do not believe the legislature intended such a result. *See Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511-13 (2006) (legislature will not be presumed to enact legislation "nullifying, to an appreciable extent, the purpose of the statute"). This is because the perception of the occupant is the same whether or not the defendant knows he is not licensed or privileged to enter. Simply put, a defendant who believes he is licensed or privileged, but who enters an occupied structure to commit a crime therein, causes the same terror sought to be prevented as a defendant who knows he is neither licensed nor privileged. Furthermore, we find it significant that, while the legislature specified in RSA 635:2, I, that a defendant must know he was not licensed or privileged to enter for purposes of criminal trespass, it did not do so in RSA 635:1, I. We therefore cannot conclude it was an unsustainable exercise of discretion to refuse the defendant's requested instruction.

The defendant next argues that there was insufficient evidence to convict him of burglary in that the State failed to prove he did not have license or privilege to enter. We disagree. In a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Pepin*, 156 N.H. 269, 280 (2007). In this case, the jury heard evidence that the defendant had moved out of the apartment, removed his personal property, and no longer had a key. Further, the jury heard evidence regarding the nature of the defen-

dant's violent entry into the apartment on the day in question. Based upon this evidence, a rational trier of fact could have found beyond a reasonable doubt that the defendant did not possess license or privilege to enter the apartment.

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.