288

Sullivan
No. 2009-015

THE STATE OF NEW HAMPSHIRE

v.

RANDY RIENDEAU

Argued: January 20, 2010
Opinion Issued: May 20, 2010

*Michael A. Delaney*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief, and *Lisa L. Wolford,* assistant appellate defender, of Concord, orally, for the defendant.

CONBOY, J. The defendant, Randy Riendeau, was found guilty of one count of driving after certification as an habitual offender and one count of driving while intoxicated (DWI), following a jury trial in Superior Court (*Arnold*, J.). *See* RSA 262:23 (Supp. 2009); RSA 265-A:2, I (Supp. 2009). He appeals, arguing that the trial court erred in granting the State's motion *in limine* and in its instructions to the jury. We affirm.

The record evidences the following facts. On August 31, 2007, the defendant accompanied his fiancée, Robyn Forward, to the Twin State Speedway in Claremont. Forward drove their vehicle, a rented 2007 Mustang, because she was a licensed driver, whereas the defendant was an habitual offender whose license had been revoked. Forward parked the Mustang in the parking lot, but subsequently permitted the defendant to drive it in a "spectator race," a race open to non-professional drivers. The defendant drove the car to the pit and onto the track, where he participated in the race. After the race, the defendant returned to the pit area, where he created a "smoke show" by spinning the tires to produce a smoke cloud. Because smoke shows are not permitted at the racetrack, the defendant's actions drew the attention of the racetrack staff and of a police officer patrolling the grounds.

Pit director Gary Baker approached the Mustang during the smoke show and asked the defendant to turn off the car and give him the keys. Baker noted that the defendant's eyes were bloodshot, that he appeared to slur his speech, and that he smelled of alcohol. When the defendant refused to get out of the car, Baker left to find a police officer. As Officer Shawn Hallock responded to the smoke show on foot, the defendant began to drive away from the pit and into the parking lot. Officer Hallock pursued the car on foot for a short distance before radioing Captain Colby Casey for assistance. Baker and Hallock saw the car proceed through the parking lot area before they lost sight of it. Forward and the defendant then left the racetrack as they had come: Forward was driving and the defendant was her passenger.

Captain Casey, driving a cruiser, caught up with the Mustang and stopped it about a quarter mile from the racetrack. He noted that the passenger, the defendant, appeared intoxicated and smelled of alcohol. He arrested the defendant based upon the information provided by Officer Hallock and information regarding the defendant's habitual offender status provided by dispatch.

Prior to trial, the State filed a motion *in limine* to exclude all testimony of any witness's subjective belief as to whether the Speedway's parking lot constitutes a "way." The defendant objected, arguing that because the State must prove every element of the offense, it must establish the *mens rea* of "knowingly" as to the "way" element of the habitual offender charge. The trial court granted the State's motion *in limine*, concluding that the *mens rea* of "knowingly" applied only to the defendant's status as an habitual offender.

At trial, the defense stipulated to the defendant's status as an habitual offender, and to his knowledge of that status. The defense argued that the defendant had limited his driving to a staging area of the Speedway track, and, therefore, the surface he drove on was not a "way." The State contended that the defendant had driven in the Speedway parking lot, which falls within the legal definition of a "way." The court's jury instructions, consistent with its ruling on the motion *in limine*, stated in pertinent part:

> Normally, the matter of intention or the defendant's mental state is something that you would have to decide. In these cases, however, Mr. Riendeau's intent is not an issue as the parties have stipulated as to this element of the offense with respect to the charge of operating a motor vehicle after being certified as a habitual offender and Mr. Riendeau's intent or mental state is not an element of the charge of driving while intoxicated. . . .

> The definition of the crime . . . of operating a motor vehicle after having been certified as a motor vehicle habitual offender has multiple elements. You need only consider two elements of this offense in light of the parties' stipulation. Thus, the State must prove, beyond a reasonable doubt that the defendant, Randy Riendeau, drove a motor vehicle and that he did so on a way.

> The parties, as I have previously advised you, have stipulated as to the other elements of this offense, namely that Mr. Riendeau knew he was prohibited from operating a motor vehicle upon the ways of New Hampshire, having been certified a habitual offender.

> The State is not required to prove that the defendant drove a motor vehicle on a surface that you qualified under the law as a way. [*sic*] The State is required to prove the knowing element only to the actual operation of the vehicle; that is, that the defendant was aware he was driving a motor vehicle and that [he] was aware

of his status as a habitual offender. The defendant does not have to know that the vehicle he is driving is on a surface that is defined by New Hampshire law as a way for the State to satisfy its burden of proof. The State need only satisfy you with respect to the existence of a way, that the surface upon which the defendant was driving is, in fact, a way under New Hampshire law.

The State, further, is not required to prove that the defendant intended to use the surface upon which he was driving in a manner consistent with a way, as defined by the law. All you need consider is whether the surface upon which the defendant was driving was, in fact, a way. "Way" is defined, for purposes of the habitual offender charge, in pertinent part, as a public or private parking lot which is maintained primarily for the benefit of paying customers. "Parking lot" is defined as an area used for the parking of motor vehicles.

We note that, although the defendant was charged with both driving after certification as an habitual offender and driving while intoxicated, the trial court's ruling on the motion *in limine* addressed "the *mens rea* argument as it relate[d] to the habitual offender charge only." The parties' briefs also focus exclusively on this issue. We therefore deem waived any argument regarding the defendant's mental state involved in the DWI charge. *See, e.g., State v. Blackmer*, 149 N.H. 47, 49 (2003) (issues not fully briefed for review are deemed waived).

The defendant argues that the trial court erred, both in its ruling on the motion *in limine* and in its jury instructions, when it interpreted the habitual offender statute as not requiring the State to prove the defendant knew that the area he was driving on was a "way." He asserts that the State must prove the *mens rea* of "knowingly" as to the "way" element of the habitual offender charge for two reasons: first, because the "way" element is a material element of the offense to which a *mens rea* must apply; and second, because the policies and purposes underlying the habitual offender statute justify applying the mental state of "knowingly" to the "way" element.

The State responds that the only element of the habitual offender charge to which the *mens rea* of "knowingly" has been applied by this court is the defendant's status as an habitual offender. It argues that to apply the *mens rea* requirement to the "way" element would contravene the purpose of the statute because it would place the risk posed by habitual offenders upon those who travel the ways of the state.

We consider issues of statutory interpretation *de novo. State v. McMillan*, 158 N.H. 753, 757 (2009). We are the final arbiter of the intent

of the legislature as expressed in the words of a statute as a whole. *Id.* "Our task is to construe Criminal Code provisions according to the fair import of their terms and to promote justice. In doing so, we look first to the plain language of the statute to determine legislative intent." *Id.* (citations omitted).

■ RSA 262:23, I (Supp. 2009) provides that "[i]t shall be unlawful for any person to drive any motor vehicle on the ways of this state while an order of the director or the court prohibiting such driving remains in effect." The statute thus does not specify any *mens rea* requirement. "However, the failure of the legislature to provide for the specific culpable mental state required for a crime does not mean that the statute is necessarily unenforceable." *State v. Stratton*, 132 N.H. 451, 457 (1989). To support conviction for a felony, New Hampshire law requires proof that a person acted either "purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." RSA 626:2, I (2007). However, "[n]either knowledge nor recklessness nor negligence as to whether conduct constitutes an offense . . . is an element of such offense, unless the law so provides." RSA 626:2, V. "When the culpable state of mind has been omitted from a statute, the State must prove the existence of the mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *Stratton*, 132 N.H. at 457.

■ ■ We first determine whether the "way" element is a "material element" of the habitual offender charge. *See, e.g., State v. Demmons*, 137 N.H. 716, 719 (1993) ("culpability applies only to material elements"). RSA 625:11, IV (2007) defines "material element of an offense" as "an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unrelated to (1) the harm sought to be prevented by the definition of the offense, or (2) any justification or excuse for the prescribed conduct." "The primary purpose of the habitual offender statute is to foster safety on the highways." *State v. Dean*, 115 N.H. 520, 524 (1975). The "way" element therefore is directly related to "the harm sought to be prevented by the definition of the offense," and we accordingly conclude that it is a "material element" of the habitual offender charge.

■ While we agree with the defendant that the "way" element is a material element of the offense, we do not agree with either of the two rationales he uses to argue that the materiality of the "way" element requires application of the "knowingly" *mens rea*. First, the defendant relies upon the following statement from *State v. Baker*, 135 N.H. 447, 449

(1992): "To prove that the defendant acted knowingly, the State had to prove knowledge as to all material elements." However, that quotation is only half of a sentence which reads in full: "To prove that the defendant acted knowingly, the State had to prove knowledge as to all material elements, RSA 626:2, I, or, in other words, that he knowingly operated a vehicle while the habitual offender prohibition was still in effect." *Id.* This formulation is consistent with our repeated articulation of the elements of the habitual offender charge.

> A conviction on the charge of operation after certification as an habitual offender requires proof of three elements: (1) that an habitual offender order barring the defendant from driving a motor vehicle was in force; (2) that the defendant drove a motor vehicle on the ways of this State while that order remained in effect; and (3) that the defendant did so with knowledge of his status as an habitual offender.

*State v. Crotty*, 134 N.H. 706, 710 (1991) (citations omitted); *see also State v. Gauntt*, 154 N.H. 204, 207 (2006); *State v. LeBaron*, 148 N.H. 226, 229 (2002). The only element to which we applied the mental state of "knowingly" in cases of driving after certification, including *Baker*, is the defendant's knowledge of his status as an habitual offender.

Similarly unavailing is the defendant's assertion that RSA 626:2, I, requires application of the same mental state to all material elements of this offense. RSA 626:2, I, provides in pertinent part, "When the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears." This provision is inapplicable on its face, since the law defining the offense at issue, RSA 262:23, I, does not prescribe the kind of culpability that is sufficient for its commission. The defendant's attempt to read this provision as embodying "a general principle favoring consistency in the application of a mental state to the several elements defining a single crime" does not dictate our result. Rather, we apply our well-settled precedent: "Where a specific mental state is not provided for the offense, we read RSA 626:2, I, as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *State v. Ayer*, 136 N.H. 191, 193 (1992) (quotations, brackets and ellipsis omitted).

Accordingly, we must determine the "culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *State v. Aldrich*, 124 N.H. 43,

47 (1983). The State asserts that the purposes of the habitual offender statute are best served by declining to require any mental state for the "way" element. The defendant, on the other hand, argues that "knowingly" is the appropriate culpable mental state applicable to the "way" element. We agree with the State that to impose the requirement of the "knowingly" mental state to the "way" element would be contrary to the purpose of the statute. *See McMillan*, 158 N.H. at 760. The legislature has expressed the purpose of the habitual offender statute in RSA 262:18 (2004), which provides:

> It is hereby declared to be the policy of New Hampshire:
>
> I. To provide maximum safety for all persons who travel or otherwise use the ways of the state; and
>
> II. To deny the privilege of driving motor vehicles on such ways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her court and the statutorily required acts of her administrative agencies; and
>
> III. To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation of the privilege to drive motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.

Thus, we have stated that "[t]he primary purpose of the habitual offender statute is to foster safety by removing irresponsible drivers from the highways of the State." *State v. O'Brien*, 132 N.H. 587, 592 (1989) (quotations and citations omitted); *see also State v. Canney*, 132 N.H. 189, 192 (1989) (describing the habitual offender statute, in part, as "part of a statutory scheme enacted to promote maximum safety on this State's roadways"); *State v. Ward*, 118 N.H. 874, 878 (1978) (same); *Dean*, 115 N.H. at 524 ("the penalty imposed upon an habitual offender is primarily for the protection of the public in removing from the highways an operator who is a dangerous and persistent offender").

This purpose is achieved only if the habitual offender is prohibited from driving on a way of this State at any time, regardless of whether he recognizes it as a way or not. *Cf. McMillan*, 158 N.H. at 761. "To hold otherwise would ignore the purpose of the statute. We do not believe the legislature intended such a result." *Id.* This is because the risk to the public is the same whether or not the defendant knows that the surface on which

he is driving is a "way." Simply put, an habitual offender who believes himself to be driving on private turf, but who is in fact driving on a road surface that falls within the statutory definition of a "way," creates the same risk sought to be prevented as an habitual offender who knows that he is driving on a "way." *See State v. Osgood*, 135 N.H. 436, 438 (1992) ("The danger to the public occurs when an habitual offender places a motor vehicle . . . in motion on the highway." (quotation and citation omitted)). "We therefore cannot conclude it was an unsustainable exercise of discretion to refuse the defendant's requested instruction." *McMillan*, 158 N.H. at 761.

The defendant's comparison of the habitual offender offense to the lesser offense of driving after suspension or revocation codified at RSA 263:64 (Supp. 2009) does not alter our analysis. The defendant points out that RSA 263:64 prohibits driving without regard as to whether the driving takes place on a "way" or elsewhere, and argues that such reflects a legislative intent to more narrowly define the more serious habitual offender offense. He reasons that, as we have required proof of the *mens rea* "knowingly" as to the habitual offender status element, we should do the same for the "way" element. We disagree.

■ ■ "[D]riving after suspension or revocation under RSA 263:64 is related as a lesser-included offense to operating as an habitual offender under RSA 262:23." *State v. Moses*, 128 N.H. 617, 621 (1986).

> Conviction of the misdemeanor offense of driving after suspension or revocation requires proof: (1) that the defendant's license to drive had been suspended or revoked; (2) that the defendant drove a motor vehicle after such suspension; and (3) that the defendant did so with knowledge of the revocation or suspension of his license to drive.

*State v. Watkins*, 148 N.H. 760, 766 (2002) (quotations and citation omitted). "Thus, both the greater and lesser offenses have a knowledge requirement" as to the status element, be it the lesser status of license suspension or revocation, or the greater status of certification as an habitual offender. *Id.* "Because an habitual offender order not to drive is a form of judicial revocation," *Moses*, 128 N.H. at 621, an habitual offender who drives on any terrain in the state, regardless of its status as a way or not, is in violation of RSA 263:64. Moreover, RSA 262:23 provides that:

> in any case in which the accused is charged with driving a motor vehicle while his license, permit or privilege to drive is suspended or revoked, or is charged with driving without a license, the court before hearing such charge shall determine whether such person

has been held an habitual offender and by reason of such holding is barred from driving a motor vehicle on the ways of this state.

Thus, the legislature has mandated that a defendant is subject to a greater penalty upon a finding of recidivism (the habitual offender certification) and driving on a surface where the public has a greater likelihood of being injured (the "way" element).

■ We remain unpersuaded by the defendant's argument that application of the "knowingly" *mens rea* to the "way" element would serve to deter habitual offenders from driving on the ways of the state. We agree that a defendant cannot be deterred from an activity he is unaware that he is undertaking. *See Aldrich*, 124 N.H. at 49. However, while deterrence is the third of the three stated purposes of the habitual offender statute, *see* RSA 262:18, the first and "primary purpose of the habitual offender statute is to foster safety by removing irresponsible drivers from the highways of the State." *O'Brien*, 132 N.H. at 592 (quotations and citations omitted). This purpose is best served by interpreting the statute as prohibiting the action itself — driving on a "way" — irrespective of the defendant's awareness of his presence on a "way." Our interpretation is further supported by the second stated purpose of the statute: "To deny the privilege of driving motor vehicles on such ways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state." RSA 262:18, II. To find otherwise would permit defendants who have "demonstrated their indifference for the safety and welfare of others" to elude punishment by asserting that they were unaware that they were driving on a "way." Requiring an habitual offender defendant, rather than the public, to bear the risk that the surface on which the defendant is driving constitutes a "way" also serves to discourage such a defendant from operating a motor vehicle at all (as is prohibited under RSA 263:64). We accordingly conclude that interpreting the statute as not requiring proof of a *mens rea* for the "way" element best fulfills the aims of the statute.

■ ■ The defendant's remaining argument, concerning ignorance of the law versus ignorance of fact, can be addressed briefly. It is well-established that "[i]gnorance of the law is no excuse." *Stratton*, 132 N.H. at 457; *cf.* RSA 626:3, II (2007) (effect of mistake of law). The defendant's arguments throughout have therefore centered upon his ignorance of fact; that is, that the surface on which he drove was a "public or private parking lot which is maintained primarily for the benefit of paying customers," fitting the statutory definition of a "way." RSA 259:125, I (Supp. 2009). The defendant argues that he drove on the race track's staging area rather than

a parking lot, and in the alternative, that such was his understanding of the character of the surface on which he drove. His first argument presents a question of fact, and the defendant does not assert a lack of evidence to support the jury's implicit finding that he drove on a parking lot. His alternative argument is moot because we hold today that RSA 262:23 does not require that a defendant recognize that he is driving on a "way"; as to the "way" element, the State need prove only that the defendant did in fact drive on a "way" as defined by the statute. The trial court's jury instructions required that the State establish "that the surface upon which the defendant was driving is, in fact, a way under New Hampshire law." This charge was accurate, and did not constitute an unsustainable exercise of discretion.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.