NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
Case No. 2023-0408
Citation: State v. Warren, 2025 N.H. 21


THE STATE OF NEW HAMPSHIRE

v.

JESSICA WARREN

Argued: March 6, 2025
Opinion Issued: May 16, 2025


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Robert L. Baldridge, assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


DONOVAN, J.

[¶1] The defendant, Jessica Warren, appeals her conviction for driving after suspension or revocation, with death resulting, pursuant to RSA 263:64, V-a (2024) (amended 2024), following a jury trial in the Superior Court (Attorri, J.). On appeal, the defendant challenges the trial court's jury instruction that did not include language requiring the State to prove any mental state with

respect to the material element of "unlawful operation."  We conclude that a mens rea of criminal negligence is applicable to the conduct underlying the "unlawful operation" element of the offense and reverse and remand.

## I.  Facts

[¶2] The jury could have found the following facts.  On September 5, 2018, the defendant — whose license was suspended — drove a minivan down a road in Concord.  She passed a delivery truck parked in a manner that blocked a bike lane.  Thereafter, the defendant's minivan collided with a bicyclist.  The minivan then veered into the opposite traffic lane, hit a curb, and collided with another vehicle.  The bicyclist died as a result of the collision.

[¶3] The defendant was subsequently charged with violating RSA 263:64, V-a for driving after revocation or suspension, death resulting.  In May 2023, a five-day jury trial took place.  At trial, the defendant asked the court to instruct the jury that the "unlawful operation" element of the offense required the State to prove that the defendant knowingly committed the act that violated a rule of the road.  The trial court, however, issued a jury instruction that did not require the State to prove any mens rea with respect to the "unlawful operation" element.  The defendant objected, but the court overruled the objection.  The jury convicted the defendant for driving after revocation or suspension, death resulting, pursuant to RSA 263:64, V-a.  This appeal followed.

[¶4] On appeal, the defendant argues that the trial court erred by failing to instruct the jury that the "knowingly" mens rea applied to the "unlawful operation" element of RSA 263:64, V-a.  The State disagrees, responding that RSA 263:64, V-a omits a culpable mental state and that despite case law holding that the "driving after revocation or suspension" element of other RSA 263:64 offenses carries a "knowingly" mens rea, the "knowingly" mens rea is inapplicable to the "unlawful operation" element.  Although we agree with the State that the "knowingly" mens rea is inapplicable, we conclude that "criminal negligence" is the appropriate mental state for the "unlawful operation" element of the offense and that the trial court erred by not including this mens rea element in its jury instruction.

## II.  Analysis

[¶5] The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case.  State v. Miller, 177 N.H. ___, ____, (2025), 2025 N.H. 11, ¶19.  When reviewing jury instructions, we evaluate claims of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case.  Id.  We determine whether

2

the jury instructions adequately and accurately explain each element of the offense, and we reverse only if the instructions did not fairly cover the issues of law in the case. Id. Whether or not a particular jury instruction is necessary, and the scope and wording of the instruction, are within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion. State v. Johnson, 157 N.H. 404, 407 (2008).

[¶6] However, the defendant's challenge to the jury instruction at issue raises a question of statutory interpretation, which we review de novo. See State v. McDonald, 163 N.H. 115, 126 (2011); State v. West, 167 N.H. 465, 468 (2015). Specifically, the issue raised on appeal requires us to interpret provisions of the Criminal Code and the Motor Vehicle Code. See State v. Woodbury, 172 N.H. 358, 366 (2019). We construe the Criminal Code according to the fair import of its terms and to promote justice. RSA 625:3 (2016). When we interpret statutes, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Woodbury, 172 N.H. 366. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. Our goal is to apply statutes in light of the policy sought to be advanced by the entire statutory scheme. State v. Addison, 165 N.H. 381, 418 (2013). Accordingly, we interpret a statute in the context of the overall statutory scheme and not in isolation. Id.

[¶7] RSA 263:64, V-a provides, in relevant part, that:

> [A]ny person who drives a motor vehicle in this state during the period of suspension or revocation of his or her license or driving privilege and is involved in a collision resulting in death or serious bodily injury . . . shall be guilty of a class B felony, where such person's unlawful operation of the motor vehicle caused or materially contributed to the collision.

Although the statute specifies no mens rea, a prosecution for the class B felony of driving after suspension or revocation, with death resulting, may not be sustained absent proof of a mens rea. RSA 626:2, I (2016); see State v. Aldrich, 124 N.H. 43, 47 (1983). RSA 626:2, I, provides: "A person is guilty of . . . a felony . . . only if he acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." "When the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears." Id.

3

[¶8] When a criminal statute does not provide for a specific mental state, we read RSA 626:2, I, as requiring proof of a culpable mental state that is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question. State v. Rollins-Ercolino, 149 N.H. 336, 338 (2003). The appropriate culpable mental state will then be applied to all material elements of an offense unless a contrary purpose appears in the language of the statute. Id.

[¶9] The trial court instructed the jury:

> In order to convict the defendant of Driving After Revocation or Suspension With Death Resulting, the State must prove the following elements beyond a reasonable doubt:
>
> > 1. That the defendant knowingly operated a motor vehicle while her driver's license was under suspension or revocation; and
> >
> > 2. That the defendant was involved in a collision resulting in a person's death or serious bodily injury; and
> >
> > 3. That the defendant operated the motor vehicle in an unlawful manner; and
> >
> > 4. That the defendant's unlawful operation caused or materially contributed to the collision.

(Emphasis added.) The court proceeded to define certain terms:

> "Unlawful operation" means operation in violation of a rule of the road. Such unlawful operation relates to conduct that causes the collision and is not satisfied merely by showing the defendant's suspension status.
> . . . .
>
> To satisfy the "unlawful operation" element, the State must prove that the defendant violated a rule of the road. The State asks you to find that the defendant violated the rule of the road set forth in a law entitled "Drivers to Exercise Due Care When Approaching Bicycle."

On appeal, the parties do not contest whether the court correctly applied the "knowingly" mens rea to the "driving after revocation or suspension" element. Nor do they contest whether "unlawful operation" is a material element of the offense. Rather, the parties' dispute turns on whether the trial court erred by failing to apply a mens rea to the "unlawful operation" element. First, the

4

defendant contends that RSA 626:2, I, "establishes a presumption that the 'knowingly' mental state applies to the unlawful-[operation] element." Further, the defendant argues that the statutory exception for when a contrary purpose plainly appears is inapplicable here. The State disagrees, arguing that we should reject the defendant's argument because we rejected a similar argument in State v. Riendeau, 160 N.H. 288 (2010). Rather, the State maintains that the mental state applicable to the "unlawful operation" element must be determined by evaluating the "'nature of the offense' and the 'policy considerations for punishing the conduct in question.'" We agree with the State on this point.

[¶10] The defendant's argument that RSA 626:2, I, requires the application of the "knowingly" mens rea to the "unlawful operation" element in addition to the "driving after revocation" element is foreclosed by Riendeau. In Riendeau, we rejected the argument that RSA 626:2, I, requires that the "knowingly" mens rea that applies to the "habitual offender" element of RSA 262:23 (2016) (amended 2018) must also apply to the "way" element of the offense. Id. at 291-92, 294. First, we noted that RSA 262:23, a statute that penalizes habitual offenders for driving on a "way" after license revocation, omits a culpable mental state. Riendeau 160 N.H. at 293. We also observed that RSA 626:2, I, provides: "When the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears." Id. at 294; RSA 626:2, I.

[¶11] In light of these observations, we concluded that RSA 626:2, I, was "inapplicable on its face, because the law defining the offense at issue, RSA 262:23, I, does not prescribe the kind of culpability that is sufficient for its commission." Riendeau, 160 N.H. at 294. We also observed that we have applied the mental state of "knowingly" to the "habitual offender" element in other cases involving RSA 262:23 offenses. Id. However, we rejected the "defendant's attempt to read [RSA 626:2, I,] as embodying 'a general principle favoring consistency in the application of a mental state to the several elements defining a single crime'" that mandates the application of the same mens rea to the "way" element. Id. Instead, we applied our well-settled precedent, which prescribes that where a specific mental state is not provided for the offense, we read RSA 626:2, I, as requiring proof of a culpable mental state that is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question. Id.

[¶12] Here, the trial court correctly rejected the defendant's argument that RSA 626:2, I, required the court to instruct the jury to apply the "knowingly" mens rea to the "unlawful operation" element. Like the statute at issue in Riendeau, RSA 263:64, V-a omits a culpable mental state. See id. at

293; RSA 263:64, V-a. Therefore, consistent with our decision in Riendeau, the part of RSA 626:2, I, providing that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears," is inapplicable. (Emphasis added.) Accordingly, consistent with Riendeau, we must determine the mens rea applicable to the "unlawful operation" element of RSA 263:64, V-a in light of the nature of the offense and the policy considerations for punishing the conduct in question. See id.

[¶13] The defendant argues that the legislative history, statutory scheme, and policy goals that underlie RSA 263:64 establish that "knowingly" is the proper mental state for the "unlawful operation" element. The State responds that the "statutory scheme and legislative history show that it would frustrate the purpose of RSA 263:64 to require the State [to] prove the defendant knowingly engaged in conduct that violated a rule of the road." Instead, the State asserts that the trial court properly determined that no mens rea should apply to this element.

[¶14] First, we address the State's argument that the trial court properly determined that no mens rea is applicable to the "unlawful operation" element by considering the statutory provision in the context of its overall statutory scheme. The trial court declined to apply a mens rea to the conduct underlying the violation of the rule of the road that satisfied the "unlawful operation" element, in part, because violation-level rule of the road offenses, like speeding, do not carry a mens rea. However, the structure of RSA 263:64 indicates that some mens rea is applicable to the "unlawful operation" element of RSA 263:64, V-a. State v. Kardonsky, 169 N.H. 150, 153 (2016).

[¶15] RSA 263:64 establishes violation-level, misdemeanor-level, and felony-level offenses for the act of driving after revocation or suspension. To establish the misdemeanor-level offense under RSA 263:64, "the State must prove: (1) that the defendant's license to drive had been suspended or revoked; (2) that the defendant drove a motor vehicle after such suspension; and (3) that the defendant did so with knowledge of the revocation or suspension of his license to drive." State v. Curran, 140 N.H. 530, 532 (1995). Misdemeanor-level and felony-level offenses carry different maximum sentences for imprisonment. RSA 651:2 (Supp. 2024). For misdemeanor offenses under the statute, the defendant is subject to a maximum punishment of one year imprisonment. See RSA 651:2, II(c); RSA 263:64, IV. The felony-level offense here, on the other hand, carries a maximum sentence of seven years. RSA 651:2, II(b); see RSA 263:64, V-a. The felony-level offense also requires proof that the driver was "involved in a collision resulting in death or serious bodily injury" and "such person's unlawful operation of the motor vehicle caused or materially contributed to the collision." RSA 263:64, V-a.

6

[¶16] If no <u>mens</u> <u>rea</u> is applicable to the "unlawful operation" element of the felony-level offense, the defendant's maximum sentence increases seven-fold based upon proof of a collision resulting in death or serious bodily injury caused, in part, by the defendant's unlawful operation but without proof of any accompanying culpable mental state to justify the increased sentence. <u>See</u> RSA 651:2, II(b)-(c); RSA 263:64, IV, V-a. Therefore, "considering the statutory scheme before us, and absent a clear expression of such an intent, '[w]e decline to construe the statute so as to lead to so harsh a result.'" <u>State v. Mandatory Poster Agency</u>, 168 N.H. 287, 293 (2015) (quotation omitted). Accordingly, we conclude that the trial court erred by declining to apply a culpable mental state to the "unlawful operation" element.

[¶17] Next, we address the mental state applicable to the "unlawful operation" element of RSA 263:64, V-a by examining the <u>mens</u> <u>rea</u> applicable to comparable elements in the most similar statutory provisions in the overall statutory scheme. <u>See</u> <u>Mandatory Poster Agency</u>, 168 N.H. at 293; <u>Rollins-Ercolino</u>, 149 N.H. at 341. The defendant contends that "nothing about the fit of RSA 263:64, V-a with other similar statutes would indicate that the legislature intended to not require a knowingly mental state as to the conduct constituting unlawful driving." Specifically, the defendant asserts that the coherence between the vehicular assault statute, the second degree assault statute, and RSA 263:64, V-a requires the application of the "knowingly" <u>mens</u> <u>rea</u> to the "unlawful operation" element. The State responds that comparing RSA 263:64, V-a with the negligent homicide statute precludes the application of the "knowingly" <u>mens</u> <u>rea</u> to this element because "accepting the defendant's proposed construction of RSA 26[3]:6[4] would require a more culpable mental state for driving after revocation or suspension, death resulting, th[a]n a conviction for negligent homicide."

[¶18] First, we consider the correlation between RSA 263:64, V-a and RSA 630:3 (2016), the negligent homicide statute. We do not strictly construe criminal statutes, but rather construe them according to the fair import of their terms and to promote justice. RSA 625:3. RSA 630:3 establishes that "[a] person is guilty of a class B felony when he causes the death of another negligently." RSA 630:3. According to the terms of this statute, a "criminal negligence" <u>mens</u> <u>rea</u> is applicable to the conduct that causes the resulting harm.

[¶19] Similarly to RSA 630:3, RSA 263:64, V-a establishes a class B felony for conduct that causes death or serious bodily injury. The statutes address conduct that causes substantially the same type of harm and classify the offenses in the same manner. Accordingly, reading RSA 263:64, V-a in harmony with the negligent homicide statute supports the conclusion that the conduct underlying the rule of the road violation that satisfies the "unlawful

7

operation" element and causes or materially contributes to the resulting harm should also be subject to a culpable mental state of criminal negligence.

[¶20] Next, we consider the correlation between RSA 263:64, V-a and RSA 265:79-a (2024), which establishes the offense of vehicular assault. The defendant argues that these "two statutes form a coherent scheme of criminal culpability" that supports the application of the "knowingly" mental state to the "unlawful operation" element. Like RSA 263:64, V-a, RSA 265:79-a penalizes conduct that causes death or serious bodily injury where the operation of the vehicle causes or materially contributes to the collision. Specifically, RSA 265:79-a provides: "Any person who causes death or serious bodily injury . . . while using a vessel or propelled vehicle . . . shall be guilty of a class A misdemeanor, where such person's negligent operation of the propelled vehicle or vessel causes or materially contributes to the collision." (Emphasis added.)

[¶21] The defendant contends that:

When the State can[not] prove criminal negligence [pursuant to RSA 265:79-a] as to the causing of the collision but can prove both (1) that the driver's license was suspended and (2) a knowing violation of a rule of the road that materially contributed to the causing of the collision, the State can win a conviction under RSA 263:64, V-a for a class B felony. In effect, to support the more serious conviction, the elements of license suspension and a knowing violation of a rule of the road substitute for the element of criminal negligence.

(Emphasis added.) We are unpersuaded. As the defendant correctly observes, RSA 265:79-a establishes a misdemeanor offense and RSA 263:64, V-a provides for a felony-level offense. However, the additional elements that the State must prove to convict under RSA 263:64, V-a independently justify the more serious classification of the offense. Contrary to the defendant's argument, the application of a "knowingly" mens rea to the "unlawful operation" element is not required for this purpose. Rather, the most consistent interpretation of these statutes imports the culpable mental state with respect to the "operation" element of the less serious offense established by RSA 265:79-a into the "operation" element of the more serious offense under RSA 263:64, V-a. Accordingly, the correlation between RSA 265:79-a and RSA 263:64, V-a supports the application of the "criminal negligence" mens rea to the "unlawful operation" element.

[¶22] Finally, we address the defendant's argument that the coherence between RSA 263:64, V-a and RSA 631:2, 1(a) (2016) requires the application of a "knowingly" mens rea to this element. RSA 631:2, I(a) defines one of the variants of second degree assault, providing that "[a] person is guilty of a class

8

B felony if he or she . . . [k]nowingly or recklessly causes serious bodily injury to another." The defendant asserts that a "knowingly" mens rea must be applicable to the conduct underlying the "unlawful operation" element of RSA 263:64, V-a because the statutes require proof of some of the same elements, define comparably serious crimes, and RSA 631:2, I(a) applies at least a "recklessly" mens rea to the defendant's conduct that causes serious bodily injury. We disagree.

[¶23] The defendant correctly observes that RSA 263:64, V-a requires proof of elements not necessary to sustain the charge under RSA 631:2, I(a). These elements include driving after revocation or suspension and the "unlawful operation" elements. See RSA 263:64, V-a; RSA 631:2, I(a). We conclude that these separate, additional elements justify the shared class B felony classification, even absent the application of the "knowingly" mental state to the "unlawful operation" element. Accordingly, when we construe RSA 263:64, V-a in light of this and other similar statutory provisions, we conclude that "criminal negligence" is the mens rea applicable to the conduct underlying the rule of the road violation that satisfies the "unlawful operation" element of the offense under RSA 263:64, V-a.

## III. Conclusion

[¶24] In light of the nature of the offense and overall statutory scheme, we conclude that "criminal negligence" is the appropriate mens rea for the "unlawful operation" element of RSA 263:64, V-a. Because the trial court's jury instructions did not include this material element when instructing the jury as to the elements of the RSA 263:64, V-a offense, we reverse and remand.

Reversed and remanded.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.

9