NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
Case Nos. 2023-0098
        2023-0099
Citation: State v. Miller, 2025 N.H. 11

THE STATE OF NEW HAMPSHIRE

v.

JALEN MILLER

Argued: October 10, 2024
Opinion Issued: February 19, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Eliana Forciniti, public defender, of Stratham, on the brief and orally, for the defendant.

DONOVAN, J.

[¶1] The defendant, Jalen Miller, appeals his convictions following a jury trial in Superior Court (Colburn, J.) on one count of second degree assault-

domestic violence, see RSA 631:2, I(f), III(a) (Supp. 2023); five counts of simple assault-domestic violence, see RSA 631:2-b, I(a) (Supp. 2023); one count of criminal mischief, see RSA 634:2 (Supp. 2023); one count of obstructing the report of a crime or injury, see RSA 642:10 (2016); and one count of false imprisonment, see RSA 633:3 (2016).  He argues that the trial court erred by: (1) refusing to instruct the jury on the defense of mutual consent regarding a simple assault-domestic violence charge; (2) omitting "necessary elements" from its jury instruction on the obstructing the report of a crime or injury charge; (3) sentencing him on both the criminal mischief and obstructing the report of a crime or injury convictions in violation of the common law merger doctrine; and (4) sentencing him on the false imprisonment, assault, and obstructing the report of a crime or injury convictions in violation of the common law merger doctrine.

[¶2] We conclude that the trial court committed no error by declining to instruct the jury on the defense of mutual consent.  We also conclude that the trial court's jury instruction with respect to the obstructing the report of a crime or injury charge was not erroneous, and the common law merger doctrine did not apply to the criminal mischief and obstructing the report of a crime or injury convictions as charged in this case.  However, we further conclude that, based upon the evidence presented at trial, the merger doctrine applies to the false imprisonment and assault convictions, and we therefore reverse the defendant's conviction for false imprisonment.  Accordingly, we affirm in part and reverse in part.

I.      Facts

[¶3] The jury could have found the following facts.  On July 14, 2022, the defendant and the victim, who were married at the time, sat on the front steps of a Nashua apartment building where they resided celebrating the defendant's birthday.  According to the victim, the defendant left with a friend to go "to a female's apartment" where the victim "didn't really want [the defendant] to be."  When the defendant returned, the victim was still sitting on the apartment building's front steps.  The defendant invited the victim to join him and his friends at a bar, but the victim refused because she was "still upset."

[¶4] When the defendant returned from the bar, he and the victim "got into an argument."  The victim, still seated on the steps in front of the building's entrance, "blocked [the defendant] from entering the building," and the two "had a little shoving match" during which the victim grabbed the defendant by his shirt, kicked the defendant's leg, and shoved the defendant with her hands.  The victim pulled the defendant off the stairs and attempted to block him from entering the apartment building because she "wanted there to be witnesses in case the argument progressed."  The defendant then "threw [the victim] down," causing her to fall approximately ten feet down the stairs into a parked car.

2

[¶5] The defendant and the victim later entered the apartment building and continued to argue. The defendant locked the victim out of their apartment, but the victim "kick[ed] the door a couple of times in frustration" because she "wanted to get [her] belongings and leave." The defendant eventually opened the door, grabbed the victim's face, and moved his hands down her neck. The defendant squeezed the victim's neck with both hands and dragged her into the apartment by her neck.

[¶6] Once inside the apartment, the defendant "pinned" the victim down on the bed, holding her neck with one hand and hitting her face and head approximately four times with his other hand. When the victim threatened to call the police, the defendant took her cell phone and threw it from the bed into the hallway. Surveillance footage from the hallway showed the cell phone being thrown from the apartment into the hallway approximately seventeen seconds after the couple entered the apartment. The victim "kicked [the defendant] off," and the defendant exited the apartment after throwing the victim's cell phone.

[¶7] The victim closed and locked the door to prevent the defendant from reentering the apartment. She screamed at him to "leave, go cool off, and we'll talk about it later," but the defendant kept "hitting the door trying to get in." While in the hallway, the defendant picked up the victim's cell phone and threw it on the ground. The defendant eventually broke down the door.

[¶8] The victim left the apartment and reported the incident to the police. The defendant told the police that he pushed the victim out of the way, grabbed her hair or neck, and threw the victim's cell phone on the ground. As relevant here, the defendant was subsequently charged with one count of second degree assault-domestic violence, five counts of simple assault-domestic violence, one count of criminal mischief, one count of obstructing the report of a crime or injury, and one count of false imprisonment.

[¶9] The victim testified to the foregoing facts at trial. The State also introduced into evidence and played for the jury surveillance video footage from the apartment building's front entrance and hallway.

[¶10] After the close of evidence, the defendant moved to dismiss the false imprisonment charge, arguing that the time during which he held the victim on the bed could not have been more than "a few seconds at most," which did not constitute confinement under RSA 633:3. The trial court denied the motion, reasoning that there was sufficient evidence that the defendant interfered, "albeit very briefly," with the victim's physical movement. The defendant also moved to dismiss the simple assault-domestic violence charge alleging that he pinned the victim "down onto a bed by placing his hand around her neck." The defendant asserted that the State had failed to prove "three separate grabs of [the victim's] neck." The trial court denied the motion.

3

[¶11] Regarding the simple assault-domestic violence charge alleging that the defendant pulled the victim down the stairs, the defendant requested that the trial court instruct the jury on the defense of mutual consent. The trial court denied the request, reasoning that "there is a gap between what could be perceived as mutual argument, mutual combat" and the initial assault of the victim.

[¶12] The defendant conceded in closing that he grabbed the victim's jaw and damaged her cell phone. The jury subsequently convicted the defendant on all charges. The trial court thereafter sentenced the defendant to three to six years, stand committed, with one year of the minimum and two years of the maximum suspended, on the second degree assault-domestic violence conviction. The trial court also imposed identical twelve-month suspended sentences, to run concurrently, on the remaining simple assault-domestic violence, criminal mischief, obstructing the report of a crime or injury, and false imprisonment convictions. This appeal followed.

## II. Analysis

### A. Mutual Consent Instruction

[¶13] On appeal, the defendant first argues that the trial court erred by failing to give an instruction on the defense of mutual consent regarding the simple assault-domestic violence charge alleging that he pulled the victim down the stairs. See RSA 631:2-a, II (2016). He contends that there was "more than a scintilla of evidence" that the victim initiated the physical altercation and that she "continued to strike" him "milliseconds before he pulled her down the stairs." The State disagrees and asserts that we "should defer to the trial court's assessment of the video and what it shows regarding the victim's retreat from the argument." The State also maintains that the trial court properly concluded that "the victim had withdrawn from the combat."

[¶14] "Although the scope and wording of jury instructions is generally within the sound discretion of the trial court, the court must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense." State v. Haycock, 146 N.H. 5, 9 (2001) (quotation omitted). "Some evidence means more than a minutia or scintilla of evidence." State v. Woodbury, 172 N.H. 358, 370-71 (2019) (quotation omitted). "To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion of a fact, but must be of such quality as to induce conviction." Id. at 371. However, the evidentiary support need not be overwhelming, nor must the evidence presented be uncontradicted. State v. Woodburn, 175 N.H. 645, 651, 654 (2023). "When there is simply no evidentiary basis to support the theory of the requested jury instruction, the party is not entitled to such an instruction, and the trial court may properly deny the party's request." Woodbury, 172 N.H. at 371.

4

[¶15] After the close of evidence, the defendant requested a lesser-included offense instruction and argued that he and the victim were "in a mutual consent fight" because the victim "hit him four times before he grabbed her and shoved her down." See RSA 631:2-b, I(a); RSA 631:2-a, II ("Simple assault is a misdemeanor unless committed in a fight entered into by mutual consent, in which case it is a violation."). Mutual consent requires that both parties agree to participate in the fight, either expressly or by implication. State v. Place, 152 N.H. 225, 227 (2005).

[¶16] The trial court's conclusion as to whether there was "some evidence" to support the defendant's requested instruction turned upon its assessment of the surveillance video footage submitted to the jury at trial. The defendant maintains that the parties' descriptions of the video showing the altercation between the defendant and the victim on the front steps at the apartment building demonstrate that there was more than a scintilla of evidence to support his requested instruction. More specifically, the defendant asserts that the video footage showed that the victim "continued to strike him" while seated "less than a second" or "milliseconds before" he pulled the victim down the stairs." However, the trial court's description of the video footage indicated that a pause in the altercation occurred between the moment when the victim shoved, grabbed, kicked, and pulled the defendant and when the defendant pulled the victim down the stairs.

[¶17] The trial court reasoned that "after [the victim] admits to striking [the defendant], pushing him, pulling him, the video is quite clear that she then does sit down" and "when you watch the video, it's clear that despite her being aggressive towards him and trying to block him from entry, she stops that at some point." As a result, the trial court determined that "there is a gap between what could be perceived as mutual argument, mutual combat," and the conduct alleged in the relevant complaint. We conclude that the record supports the trial court's finding that the evidence did not support the defendant's request for a mutual consent instruction See id. at 228.

B. Obstructing Report of Crime or Injury Instruction

[¶18] The defendant next asserts that the trial court committed plain error by omitting elements of the obstructing the report of a crime offense from its jury instruction. See RSA 642:10, I(a). Plain error is used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. State v. Batista-Salva, 171 N.H. 818, 824 (2019). To find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Maxi, 176 N.H. 455, 459 (2024), 2024 N.H. 8, ¶7. If all three conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity, or public reputation of

5

judicial proceedings.  Id.  The defendant bears the burden of demonstrating plain error.  Batista-Salva, 171 N.H. at 824.

[¶19] "The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case."  State v. Etienne, 163 N.H. 57, 70 (2011) (quotation omitted).  When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case.  Id.  We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case.  Id.  Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are decisions that fall within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion.  Id.  To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case.  Id.  However, when a particular jury instruction raises a question of law relating to the State's burden of proof, we review the question de novo.  State v. Boggs, 171 N.H. 115, 122 (2018).

[¶20] RSA 642:10 provides, in relevant part, that a person shall be guilty of obstructing the report of a crime who "damages . . . any telephone, radio, or other electronic communication device with a purpose to obstruct, prevent, or interfere with . . . [t]he report of any criminal offense to any law enforcement agency."  RSA 642:10, I.  The trial court recited the language from the complaint to the jury:

> Turning now to the charge of obstructing the report of a crime or injury, . . .  [the defendant] is alleged to have committed this crime . . . in that he "with the purpose of preventing [the victim], an intimate partner, from calling the Nashua Police Department and reporting that he had just assaulted her.  He damaged [the victim's] cell phone by throwing it against the floor."

It then instructed that:

> The definition of this charge has three elements or parts.  The State must prove each part of the definition beyond a reasonable doubt. So the State must prove, number one, the Defendant prevented [the victim] from reporting a crime to the Nashua Police Department as described; and two, [the victim] was the Defendant's intimate partner; and three, the Defendant acted purposely.

In addition, the court instructed the jury that a "person acts purposely when his conscious object is to cause a certain result or engage in certain conduct."

6

[¶21] The defendant contends that the court "failed to instruct the jury that the State needed to prove that [he] broke the phone and that his purpose in breaking the phone was to prevent the report of a crime to law enforcement." He argues that an "individual can prevent the report of a crime in many ways unrelated to a telephone, radio, or other electronic communication device." However, we agree with the State that, "[w]hile this may be true, the jury instruction did not leave the jury with the impression that this charge involved anything other than breaking the victim's phone."

[¶22] The trial court read the allegations from the complaint and then instructed the jury that it had to find, beyond a reasonable doubt, that the defendant "prevented [the victim] from reporting a crime to the Nashua Police Department as described." By its use of "as described," which immediately followed the court's recitation of the language in the complaint, the court instructed the jury that it had to find that the defendant, "with the purpose of preventing [the victim] . . . from calling" the police, damaged the victim's cell phone "by throwing it against the floor." (Quotation omitted.) Therefore, the jury was instructed that the State had to prove that the defendant damaged the victim's cell phone with the purpose of preventing her from calling the police.

[¶23] We are not persuaded that this instruction may have led the jury to confuse or conflate the defendant's two separate acts of throwing the victim's phone by which he intended to prevent the victim from calling the police. Regardless of which act damaged the victim's cell phone, the trial court's instruction made clear that the jury had to find that the defendant damaged the victim's phone with the purpose of preventing her from calling the police. See RSA 642:10, I.

[¶24] Accordingly, viewing the trial court's instructions on the elements of this offense in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case, we conclude that the trial court sufficiently instructed the jury on the elements of obstructing the report of a crime. See Etienne, 163 N.H. at 70; RSA 642:10, I(a). Finding no error, we have no occasion to consider the additional prongs of the plain error analysis. See Maxi, 176 N.H. at 459, 2024 N.H. 8, ¶7.

C. Merger

[¶25] The defendant next argues that his sentences violated the common law merger doctrine. He contends that the trial court erred in sentencing him: (1) on both the obstructing the report of a crime and the criminal mischief convictions; and (2) on the false imprisonment, second degree assault-domestic violence, simple assault-domestic violence, and obstructing the report of a crime convictions. We consider both arguments in turn.

7

[¶26] "While a single transaction can give rise to multiple, distinct offenses, crimes will merge only where the identical criminal act constitutes both offenses." State v. Young, 159 N.H. 332, 341 (2009). "In the context of multiple sentences stemming from a single act, there should be no difference between a double jeopardy analysis and a common law merger analysis." State v. Ramsey, 166 N.H. 45, 50 (2014) (brackets and quotation omitted). "[D]ouble jeopardy and merger are identical in this context and the operative consideration in both is whether the two . . . offenses are the same or different." Id. (brackets and quotation omitted). Accordingly, we apply double jeopardy principles to analyze whether the two offenses at issue were the "same" for purposes of the common law merger doctrine. Id.

[¶27] The issue of double jeopardy presents a question of constitutional law subject to de novo review. State v. Lynch, 169 N.H. 689, 706 (2017). Multiple punishment cases come in two varieties. Id. First, there are so-called "double-description" cases, in which the issue is whether two statutes describe two separate offenses or are merely different descriptions of the same offense. Id. Second, there are "unit of prosecution" cases in which the problem is not that the same course of conduct is proscribed by more than one statute but that a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision. Id. The defendant argues, and the State does not dispute, that the circumstances of this case present a "double-description" matter.

[¶28] "[T]wo offenses will be considered the same for double jeopardy purposes unless each requires proof of an element that the other does not." Maxi, 176 N.H. at 460, 2024 N.H. 8, ¶9 (quotation omitted). We focus upon whether proof of the elements of the crimes as charged will require a difference in evidence. Id. In making this inquiry, we review and compare the statutory elements of the charged offenses in light of the actual allegations contained in the indictments. Id. This test is referred to as the "same evidence" test. Id.

1. Obstructing the Report of a Crime and Criminal Mischief

[¶29] We first consider the defendant's argument, raised under our plain error rule, see Sup. Ct. R. 16-A, that the trial court erred by sentencing him on the obstructing the report of a crime and criminal mischief convictions. The defendant contends that the convictions should merge because they both required proof that he purposely damaged the victim's cell phone.

[¶30] The defendant was convicted and sentenced for obstructing the report of a crime in violation of RSA 642:10. As charged in the complaint, the State had to prove that the defendant "with the purpose of preventing [the victim], an intimate partner, from calling the Nashua Police Department and reporting that he had just assaulted her, he damaged [the victim's] cellphone by throwing it against the floor."

8

[¶31] The defendant was also convicted and sentenced for criminal mischief. RSA 634:2, I, provides that a "person is guilty of criminal mischief who, having no right to do so nor any reasonable basis for belief of having such a right, purposely or recklessly damages the property of another." In addition, paragraph II-a specifies that "[c]riminal mischief is a class A misdemeanor if the actor purposely causes or attempts to cause pecuniary loss in excess of $100 and not more than $1,500." RSA 634:2, II-a. As charged in the complaint, the State had to prove that the defendant:

> having no right to do so nor any reasonable basis for belief of having such a right; he purposely damaged property of another, an Apple Iphone belonging to [the victim]; an intimate partner, by throwing it on the floor; thereby purposely causing a pecuniary loss of not more than $1000.00.

[¶32] The defendant argues that the evidence required to convict him of criminal mischief was the same as the evidence needed to convict him of obstructing the report of a crime because the State was required to prove that he purposely damaged the victim's cell phone for both offenses. We disagree.

[¶33] In this case, proof of the elements of the two crimes as charged required different evidence. For example, evidence that the defendant acted "with the purpose of preventing [the victim], an intimate partner, from calling the Nashua Police Department and reporting that he had just assaulted her" was essential to sustain the charge for obstructing the report of a crime but not the criminal mischief charge. Similarly, evidence that the defendant purposely damaged the property of another "having no right to do so nor any reasonable basis for belief of having such a right" was essential to sustain the criminal mischief charge but not the obstructing the report of a crime charge.

[¶34] Our conclusion is not altered because, as alleged in the complaints, both the obstructing report of a crime and criminal mischief charges required proof that the defendant threw the victim's cell phone on the floor. There is no dispute that the defendant threw the victim's phone on the ground twice. First, the defendant threw the victim's cell phone into the hallway to prevent the victim from calling the police, and second, after the victim had locked him outside of the apartment in the hallway, he again threw the cell phone to the ground. The similarity of evidence used to prove some of the elements does not mean that the same evidence is required for all of the elements. State v. McKean, 147 N.H. 198, 201 (2001).

[¶35] Accordingly, because the two convictions required proof by different evidence, the trial court did not err by sentencing the defendant on both the obstructing report of a crime and criminal mischief convictions. See Ramsey, 166 N.H. at 51. Finding no error, we need not consider the additional prongs of the plain error analysis. See Maxi, 176 N.H. at 459, 2024 N.H. 8, ¶7.

9

2.  False Imprisonment and Assault

[¶36] Finally, the defendant argues that "the court erred in failing to find that the false imprisonment conviction merged into the other convictions" for sentencing. (Emphasis omitted.) Specifically, he contends that "the confinement was incidental to the crimes of strangulation, simple assault and obstructing the report of a crime."

[¶37] Preliminarily, the State contends that this argument is not preserved because it was not raised at sentencing. We disagree. We have previously determined that a merger issue relating to two convictions was preserved for our review when the defendant moved to dismiss, arguing that two charges were not independent of one another, and the court heard arguments from both parties on the issue before denying the motion. See State v. Casanova, 164 N.H. 563, 567 (2013). Here, the defendant moved to dismiss the false imprisonment charge, asserting that the time during which he held the victim down on the bed did not constitute confinement under RSA 633:2 or RSA 633:3. The trial court denied the motion, concluding that the victim's testimony established that the defendant "at least briefly interfered substantially with [the victim's] physical movement." The defendant also moved to dismiss the simple assault-domestic violence charge alleging that he pinned the victim "down onto the bed by placing his hand around her neck," arguing that it was not "distinct from the other two" charges alleging that he grabbed the victim's neck.

[¶38] Although the defendant did not raise the issue of merger with respect to the assault or false imprisonment charges, the trial court questioned whether this conduct was "the same act essentially that comprise[d] the false imprisonment." The State acknowledged that "maybe they merge for purpose[s] of sentencing, that the simple assault was the means of accomplishing the false imprisonment," but asserted that the jury should be allowed to decide whether to convict on both charges. The trial court agreed with the State and denied the defendant's motion. However, the trial court noted that "if [the defendant] should be convicted of both," it "want[ed] to think about the sentencing because they may merge and because they are the same act." In light of the trial court's consideration of this issue, we conclude that it is preserved for review. See id.; Woodburn, 175 N.H. at 650 ("[W]e will find an argument preserved only if the trial court had the opportunity to consider that legal issue or the development of facts that might or might not have supported the specific argument raised on appeal." (quotation omitted)).

[¶39] Turning to the merits of the dispute, we first address whether the false imprisonment conviction should have merged with one of the simple assault-domestic violence convictions for sentencing. The defendant contends that the false imprisonment conviction should have merged with the simple assault conviction for pinning the victim onto the bed because the defendant's

confinement of the victim on the bed was incidental to the assault rather than a separate act. Further, he asserts that "[w]hat constitutes 'interfered substantially with [the victim's] physical movement' so as to constitute a separate offense in the context of false imprisonment is a question of first impression in New Hampshire." As support for this argument, the defendant analogizes the facts of this case to those presented in Casanova.

[¶40] In that case, the defendant argued that the merger doctrine prohibited his conviction for both attempted kidnapping and attempted aggravated felonious sexual assault (AFSA) because the evidence "failed to show that he attempted to confine [the victim] in a manner independent of his efforts to commit attempted AFSA." Casanova, 164 N.H. at 566. We observed that the kidnapping statute does not limit the nature of confinement and that, as a result, "an act of confinement could overlap with the elements of other crimes, including sexual assault and robbery, because detention and sometimes confinement, against the will of the victim, frequently accompany these crimes." Id. (quotation omitted).

[¶41] "To rectify this overlap," we took the opportunity to explain the merger doctrine:

> The merger doctrine, in this context, prohibits a conviction for kidnapping based upon acts that fall within the definition of that crime but are merely incidental to another crime. This doctrine is one of fairness, prohibiting distortion of lesser crimes into much more serious crimes by excess of prosecutorial zeal. The doctrine, however, is not designed to merge true kidnappings into other crimes merely because the kidnappings were used to accomplish ultimate crimes of lesser or greater gravity. Whether restraint and movement are merely incidental to another crime or support kidnapping as a separate crime is a fact-specific determination based on the totality of the circumstances.

Id. at 566-67 (quotations and internal citations omitted).

[¶42] Based upon the evidence presented at trial, we concluded that "the defendant's attempt to confine [the victim] was incidental and inseparable from his attempt to commit AFSA." Id. at 568. We reasoned that the defendant's "act of touching [the victim's] hand was 'minimal'" and "the defendant's actions in attempting to confine [the victim] were in furtherance of the attempted AFSA." Id. We also observed that "it is unlikely the Legislature intended to criminalize restraint that is integral to other crimes, even though kidnapping might sometimes be spelled out literally from the statutory words." Id. at 569 (quotation omitted).

[¶43] Here, the defendant was convicted and sentenced for false imprisonment. A person commits the crime of false imprisonment when "he knowingly confines another unlawfully, as defined in RSA 633:2, so as to interfere substantially with his physical movement." RSA 633:3. RSA 633:2, in turn, provides that "'confines another unlawfully,' as used in . . . RSA 633:3, includes but is not limited to confinement accomplished by force, threat or deception." RSA 633:2, II (2016). The false imprisonment complaint alleged that the defendant knowingly confined the victim, "an intimate partner, unlawfully so as to interfere substantially with her physical movement" and that he "pinned [the victim] down onto a bed by placing his hand around her neck."

[¶44] The defendant was also convicted and sentenced for simple assault-domestic violence. "A person is guilty of domestic violence if the person . . . [p]urposely or knowingly causes bodily injury or unprivileged physical contact" against "a family or household member or intimate partner" by "use of physical force." RSA 631:2-b, I(a). The pertinent complaint alleged that the defendant "knowingly cause[d] unprivileged physical contact to [the victim], an intimate partner, through the use of physical force" and "did pin [the victim] down onto a bed by placing his hand around her neck."

[¶45] Similar to kidnapping, the confinement necessary to satisfy the elements of false imprisonment is not fully defined by the Criminal Code. See RSA 633:2, II. Consequently, an act of confinement that constitutes false imprisonment could also "overlap with the elements of other crimes." Casanova, 164 N.H. at 566 (quotation omitted).

[¶46] We agree with the defendant that the merger doctrine applies because the defendant's confinement of the victim was incidental to and inseparable from the conduct constituting the simple assault-domestic violence charge. See id. at 567-69. As charged, both offenses required the State to prove that the defendant pinned the victim down on the bed by placing one hand around her neck. Whereas the false imprisonment complaint required proof that the defendant knowingly confined the victim, the simple assault-domestic violence complaint required proof that the defendant caused unprivileged physical contact. However, the defendant's confinement of the victim was inseparable from the act of causing "unprivileged physical contact." Therefore, the defendant's confinement of the victim was in furtherance of the simple assault, which supports the conclusion that the confinement was "solely intended to enable the defendant to accomplish his overall criminal scheme." Id. at 568 (quotation and brackets omitted).

[¶47] As was the case in Casanova, we recognize here that it is unlikely that the legislature intended to criminalize restraint that is integral to other crimes, and, thus, it is irrelevant whether the statutes are intended to prohibit different types of criminal activity. See id. at 569. Applying the merger

12

doctrine, we hold that the false imprisonment conviction and simple assault-domestic violence conviction should have merged, and we reverse the false imprisonment conviction. Of course, if the legislature disagrees with our construction of this statute, it is free, within constitutional limits, to amend it as it deems fit. See State v. Van Uden, 176 N.H. 772, 780 (2024), 2024 N.H. 47, ¶21. Given our conclusion, it is unnecessary to address the question as to whether the false imprisonment conviction should have merged with the other assault and obstructing the report of a crime convictions for sentencing.

Conviction on Charge ID # 1994917C reversed; all other convictions affirmed.

BASSETT and COUNTWAY, JJ., concurred.